# Exhibit 3



NORTH AMERICA    SOUTH AMERICA    EUROPE

200 Park Avenue
New York, NY 10166
T +1 (212) 294-6700
F +1 (212) 294-4700

**DAVID L. GREENSPAN**
Partner
+1 (212) 294-4616
DGreenspan@winston.com

October 10, 2025

<u>**VIA EMAIL**</u>
Jason C. Kravitz
Nixon Peabody LLP
Exchange Place, 53 State Street
Boston, MA 02109
jkravitz@nixonpeabody.com

> **Re:    <u>Leaf NFL Player Trading Cards</u>**

Dear Jason,

This firm represents the National Football League Players Association (the "<u>NFLPA</u>") and OneTeam Partners, LLC ("<u>OneTeam</u>").  I write in response to your July 23, 2025 letter ("Letter"). The NFLPA and OneTeam were disappointed by Leaf Trading Cards' ("<u>Leaf</u>") refusal to provide the information they requested so that the parties could engage in productive discussions to answer their questions and resolve their concerns.  As a result, we conducted our own investigation and, as described in more detail below, it appears that Leaf is manufacturing, selling and advertising trading cards without a license from either the NFLPA or individual Players to do so.

At the outset, while the NFLPA and OneTeam appreciate Leaf's acknowledgment of the NFLPA's group licensing program and many of their rights thereunder, your Letter reflects a misunderstanding of the scope of the group licensing program.  The NFLPA, and its subsidiary NFL Players Inc., are the exclusive licensing agents for NFL Players' (the "<u>Players</u>") names, images, likenesses, nicknames, initials, persona, personal indicia, jersey numbers, autographs/signatures (including facsimiles), voices, pictures, photographs, animations, identities, statistics, biographical information and/or other identifying characteristics of the Players (the "<u>Attributes</u>"), when used in a group of six (6) or more Players (the "<u>Group Player Rights</u>").  As Leaf surely knows given its long tenure in the sports trading card business, virtually every single NFL Player has participated in the NFLPA group licensing program since its inception more than 30 years ago (collectively, many tens of thousands of Players).  Presently, 100% of NFL Players are participating.

To be clear, these Group Player Rights cover any product, service, sponsorship, endorsement, promotion or any commercial use whatsoever utilizing the Attributes of a total of six (6) or more Players, regardless of team affiliation and whether that number is reached using Players' Attributes simultaneously (e.g., in a single item, such as an individual trading card),

**WINSTON
&STRAWN**
LLP

October 10, 2025
Page 2

individually (e.g., in interrelated or a series of items within a single product category, such as trading cards) or concurrently (e.g., in a product line, such as a set of trading cards). In other words, contrary to the suggestion in your Letter, six (6) or more NFL Players *do not* need to be included on a "specific Leaf trading card" in order to implicate the NFLPA's Group Player Rights. Surely Leaf knows this too because it is common industry knowledge that Panini presently holds the NFLPA's exclusive Group Player Rights to produce and sell trading cards, yet Panini does not produce or sell individual cards that feature six Players. Rather, Panini was required to secure a license from the NFLPA because it uses six or more NFL Players' Attributes collectively across all of its trading card products. *See, e.g., Gridiron.com, Inc. v. Nat'l Football League Player's Ass'n, Inc.*, 106 F. Supp. 2d 1309, 1312–14 (S.D. Fla. 2000) (finding that the Gridiron's use of NFL player images, including on its website "utiliz[ing] the images of over 150 NFL players," violated the NFLPA's Group Player Rights, since Gridiron "used more than six players['] images in conjunction with products or on products which were sold at retail"); *Topps Chewing Gum, Inc. v. Major League Baseball Players Ass'n*, 641 F. Supp. 1179, 1187–91 (S.D.N.Y. 1986) (finding that players associations "act[] as an agent for the players in licensing manufacturers or distributors of products to use the [players' publicity] rights" and that defendant trading card manufacturer needed to license the players' rights of publicity in order to produce "a complete set of baseball trading cards"); *MLB Players Inc. v. DraftKings, Inc.*, 771 F. Supp. 3d 513 (E.D. Pa. 2025) (denying motion to dismiss right of publicity claims brought by MLB Players, Inc. over DraftKings' use of groups of MLB players across its products and social media). We trust this resolves any purported confusion and, in any event, Leaf is now on notice about the scope of the NFLPA's intellectual property rights.

Turning back to the issue at hand, our investigation revealed that Leaf is using the Attributes of at **least thirteen (13) Players** in its trading card products *without* any license—from either the NFLPA or the individual Players—to do so. In some instances, it appears that Leaf held a license from a Player, which has since expired. In others, our understanding is that the Players were never party to a license with Leaf. While our investigation remains ongoing, we believe that at least the following Players fall into one of these categories and therefore, their Attributes may not be commercialized by Leaf in any way whatsoever:

1. Brandon Aubrey
2. Garrett Greene
3. Jalen Milroe
4. Ja'Marr Chase
5. Jayden Daniels
6. Jordan James
7. Justin Jefferson
8. KeAndre Lambert-Smith
9. Keenan Allen
10. Kyren Williams
11. Malik Washington
12. Tetairoa McMillan
13. Woody Marks



October 10, 2025
Page 3

Not only are these Players' Attributes in Leaf's products and advertising a violation of the NFLPA's Group Player Rights, they are a brazen violation of the Players' individual rights. If Leaf contends that it does have an active license with any Players that authorizes Leaf to sell cards today containing their Attributes, please promptly provide us with copies of them. Otherwise, the NFLPA and OneTeam demand that Leaf immediately cease and desist its use of the Attributes of these Players and any other Players with whom Leaf does not have an active license.

Based on our investigation, we believe that Leaf has caused—and is continuing to cause—grave harm to the NFLPA and OneTeam, including but not limited to monetary damages of millions of dollars. They expect to be made whole and demand a full accounting of all unlicensed product sales and marketing containing Players' Attributes.

Accordingly, please confirm in writing by October 17 that Leaf will (1) immediately take steps to cease its unlicensed use of Player Attributes; and (2) prepare and provide a full accounting of all unlicensed product sales and marketing containing Players' Attributes. It remains our hope that the parties can reach an amicable resolution, however, the NFLPA and OneTeam will not hesitate to fully enforce their rights and the rights of the NFLPA's Player members if we do not receive such written confirmation.

Finally, while we trust that you have advised Leaf of its preservation obligations, to be clear: Leaf is directed to take all necessary steps to ensure its compliance with its duty to preserve, maintain and protect all potentially relevant information relating to this dispute.

The NFLPA, One Team and their respective members, affiliates and agents reserve all rights.

Sincerely,

*/s/ David L. Greenspan*
David. L Greenspan

cc:     Matt Curtin
        Sophie Gage
        Sean Sansiveri
        Tim Slavin